IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | C.R. NO. C-09-1026M |
| | § | |
| JESUS S. RODRIGUEZ | § | |

## OPINION DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant was charged with driving while intoxicated in a national park of the United States in violation of 36 C.F.R. §§ 4.23(a)(1), 1.3(a). (D.E. 1). Pending is Defendant's motion to suppress. (D.E. 12). Defendant argues that his stop at a road audit was an unconstitutional seizure in violation of the Fourth Amendment. For the reasons stated herein, Defendant's motion is DENIED.

### I. BACKGROUND

A hearing was held on December 18, 2009 regarding the motion to suppress. Ranger Timothy Thompson testified at this hearing. He indicated that he was a Supervisory Ranger at Padre Island National Seashore ("Padre Island"), a national park, and has served there since February 2009. Moreover, he has served as a park ranger with the National Park Service for ten years, serving at four other national parks.

When visitors enter Padre Island, they generally are greeted at entrance by a ranger collecting the entrance fee. Visitors to Padre Island pay ten dollars to enter and receive a pass good for a week. They can also purchase an annual Padre Island pass for thirty dollars. The National Park Service also issues annual passes that provide for free entrance at all national parks as well as special passes for disabled visitors and senior citizens. The revenue generated at Padre Island from entrance fees is used to provide for operation of Padre Island, including

improvements. It is included within the park's annual budget offsetting the amount provided for operation from the United States Treasury.

The National Park Services has issued policies concerning accountability of entrance fees. See Gov't Ex. 1 (Reference Manual 22: Recreation Fee Guidance, Chapter 5). Section 6 addresses audits and program reviews, including road audits.

Ranger Thompson testified that at least once a month, and potentially twice a month, the rangers at Padre Island conduct a road audit, which is used to audit fee collection by attendants at the park entrance. The audit is a road checkpoint set up by rangers out of sight of the entrance gate, at which visitors are asked questions concerning their pass, where they purchased it, and how much they paid for it. During a typical audit at Padre Island, motorists will stop to talk to an officer for usually less than a minute, and as many as eight cars may be waiting in line to pass through the checkpoint. No cars in the line are waived through without being questioned. The information collected from an audit is later compared against fee collection logs to find possible cases of employee fraud. Since February of 2009, there have been no incidents of fraud uncovered by road audit at Padre Island, but Ranger Thompson testified that such audits are employed nationally and have uncovered fraud at other parks, including a couple where he served.

On June 28, 2009, Ranger Matthew Rosselot set up a road audit at 5:50 p.m. on Park Road 22. Gov't Ex. 2. The checkpoint consisted of two rangers wearing reflective vests in the road with orange safety cones. Their patrol car was parked on the side of the road with flashing emergency lights. At around 6:15 p.m., Defendant was leaving Padre Island when he encountered this road audit. (D.E. 12, at 2). When he pulled to the checkpoint, Ranger Rosselot

detected the smell of alcohol on Defendant, administered a field sobriety test and portable breath test, and arrested Defendant for driving while intoxicated. Id. at 2-3.

## II. DISCUSSION

Defendant argues that the checkpoint at which he was stopped was an illegal seizure in violation of the Fourth Amendment, and that evidence obtained against him therefrom is inadmissible as fruit of the poisonous tree. (D.E. 12). Both parties acknowledged that they were unaware of any case law addressing the question of whether a checkpoint to assess whether park fees were being paid properly.

**A.     The Government Has The Burden Of Proof.**

The Fourth Amendment protects individuals from unreasonable searches and seizures by law enforcement officials. When a defendant demonstrates that the search was conducted without a warrant, the government has the burden of proof. United States v. Roch, 5 F.3d 894, 897 (5th Cir. 1993) (citation omitted); United States v. Jaquez, 421 F.3d 338, 341 (5th Cir. 2005) (per curiam) (citation omitted). Because Defendant was seized without a warrant, the government has the burden of proof here.

**B.     The Seizure Did Not Violate The Fourth Amendment.**

The Supreme Court has repeatedly ruled that stopping a vehicle at a checkpoint constitutes a seizure pursuant to the Fourth Amendment. City of Indianapolis v. Edmond, 531 U.S. 32, 40 (2000) (citing Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450 (1990)). The constitutionality of seizures depends on their reasonableness, which is determined by a weighing of three factors: "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with

individual liberty." Brown v. Texas, 443 U.S. 47, 50-51 (1979) (citing United States v. Brignoni-Ponce, 422 U.S. 873, 878-83 (1975)). Additionally, "a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers." Id. at 51 (citing Delaware v. Prouse, 440 U.S. 648, 663 (1979)).

Furthermore, checkpoints with the primary purpose of "general crime control" violate the Fourth Amendment without "some quantum of individualized suspicion." Edmond, 531 U.S. at 47. Such seizures are per se invalid. Id. at 48.

First, concerning the gravity of public concerns, the Supreme Court has approved, as constitutional, checkpoints attempting to gather information about a hit-and-run car accident that resulted in a death, Illinois v. Lidster, 540 U.S. 419 (2004); identify intoxicated motorists, Sitz, 496 U.S. 444; and apprehend illegal immigrants on a road running from the border. United States v. Martinez-Fuerte, 428 U.S. 543 (1976). Additionally, the Prouse Court suggested that a checkpoint whereby all on-coming traffic would be stopped to check for a driver's license and registration could be constitutional. 440 U.S. at 663. On the other hand, it has found a checkpoint primarily intended to discover and interdict illegal narcotics to be unconstitutional. Edmond, 531 U.S. 40. The Court distinguished Edmond from Sitz because the checkpoint in Sitz was intended to ensure highway safety, whereas the checkpoint in Edmond was intended to "advance 'the general interest in crime control.'" Id. at 41, 44.

Additionally, several cases similar to this action have come before the Ninth Circuit. That court has determined that a checkpoint stop by a federal ranger was reasonable where the

purpose was to distribute litter bags, "which included regulations concerning campfires for fire safety, refuse disposal for litter control, and camp restrictions." United States v. Faulkner, 450 F.3d 466, 470 (9th Cir. 2006); see also United States v. Hawkins, 249 F.3d 867, 873 (9th Cir. 2001) (because "the military has a substantial interest in preventing theft of its property and in ensuring national security," a fixed "checkpoint advanced a substantial public interest"); Freece v. Clackamas County, 442 F. Supp. 2d 1080, 1087 (D. Or. 2006) (brief seizure to enable ranger "to talk to park users about littering, with the goal of reducing littering" was reasonable). Moreover, in United States v. Fraire, 575 F.3d 929 (9th Cir. 2009), the Ninth Circuit addressed a vehicle checkpoint in the Kings Canyon National Park that was designed "to counter illegal hunting within that park." Id. at 933. The court concluded that public interest in wildlife protection as well as visitor safety were pressing concerns. Id.

Second, the public interest must be balanced against the individual's privacy and liberty interests. Sitz, 496 U.S. at 450; Collins v. Ainsworth, 382 F.3d 529, 539 (5th Cir. 2004). Courts must address the "effectiveness of the checkpoint program. Sitz, 496 U.S. at 453-55. For example, checkpoints have been found constitutional when they resulted in 1.5 percent of drivers being found to be intoxicated, id. at 454-55; and .12 percent of cars being found to contain illegal aliens. Martinez-Fuerte, 428 U.S. at 554.

Third, concerning the severity of interference with liberty, the Supreme Court has approved seizures that involved a brief wait in line, a couple seconds talking to police, and police handing out flyers and asking for information, Lidster, 540 U.S. at 427-28; stopping drivers for 25 seconds and examining them for signs of intoxication, Sitz, 496 U.S. at 448, 455; and stopping drivers for three to five minutes and inquiring about citizenship and immigration

status.  Martinez-Fuerte, 428 U.S. at 547.  Similarly, in Faulkner, every approaching car was stopped for about 20 seconds to promote litter awareness.  450 F.3d at 468.

Here, the ranger's checkpoint is reasonable according to the balancing test.  First, road audits protect against public fraud: an important public concern.  Padre Island visitors pay an entrance fee to help offset the cost of park security and maintenance, which is otherwise paid by taxpayers.  Therefore, road audits serve to reduce taxpayers' burdens and ensure smooth operations in our federally run park system.

Second, road audits advance this public concern by providing an independent check against fee collectors.  They are conducted unbeknownst to, and out of sight of, collectors, and allow rangers to monitor the veracity of fee collection logs.  It is true that road audits at Padre Island over the last nine months have uncovered no instances of fraud, but the Supreme Court has approved of extremely low incident rates in the past, and audits from other parks reveal that fraud does in fact occur.

Third, the intrusion into the personal lives of park visitors, while real, is only minimal.  Audits are only conducted once or twice a month for about 30 minutes.  When motorists drive up to a ranger, they are stopped for less than a minute and are asked only a few questions regarding the purchase of their passes.  Moreover, motorists waiting in line at the checkpoint do so only for a few minutes.  This type of personal intrusion is typical of checkpoints approved by the Supreme Court and strikingly similar to multiple checkpoints found to be constitutional by the Ninth Circuit.  In the end, the road audit involves an important public concern, a method that advances that concern, and minimal encroachment into the private lives of park visitors.

In addition to the balancing factors, the primary purpose of the checkpoint is not for

general crime control, but administrative monitoring.  The fact that Defendant was ultimately charged with a criminal offense "does not establish that the primary purpose of the stop was to advance the general interest in crime control."  Faulkner, 450 F.3d at 471.

### III. CONCLUSION

The road audit where Defendant was arrested was a reasonable seizure, did not violate the Fourth Amendment, and the evidence obtained from it is not inadmissible fruit of the poisonous tree.  Accordingly, Defendant's motion to suppress, (D.E.12), is DENIED.

ORDERED this 23rd day of December 2009.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE